32 P.3d 408

Clark R. KERR and Billie Sue Kerr, husband and wife, Susan Moran, Steve Allen and John Udall, individually and as representatives of the class comprised of federal employees who paid Arizona income taxes on federal retirement contributions during one or more of the years 1984 to date, Plaintiffs–Appellees, Cross–Appellants,

v.

Mark J. KILLIAN, in his capacity as Director of the Arizona Department of Revenue, the Arizona Department of Revenue of the State of Arizona, Defendants–Appellants, Cross–Appellees.

State of Arizona, ex rel., the Arizona Department of Revenue, Plaintiff–Appellant, Cross–Appellee,

v.

Clark J. Kerr and Billie Sue Kerr, husband and wife, Defendants–Appellees, Cross–Appellants.

Clark J. Kerr and Billie Sue Kerr, husband and wife;  and their Attorneys, Bonn, Luscher, Padden & Wilkins, Chartered and O'Neil, Cannon & Hollman, S.C., Counterclaimants–Appellees, Cross–Appellants,

v.

State of Arizona, ex rel., the Arizona Department of Revenue, Counterdefendant–Appellant, Cross–Appellee.

No. 1 CA–TX 00–0023.

Court of Appeals of Arizona,
Division 1, Department T.

Aug. 28, 2001.

Bonn & Wilkins Chartered, by Paul V. Bonn, Randall D. Wilkins, D. Michael Hall, Phoenix, and O'Neil, Cannon & Hollman, S.C., by Eugene O. Duffy, Milwaukee, WI, Attorneys for Appellees–Cross–Appellants.

Janet Napolitano, Attorney General, by Patrick Irvine, Assistant Attorney General, Christine Cassetta, Assistant Attorney General, Phoenix, Attorneys for Appellant–Cross–Appellee.

## OPINION

PATTERSON, Judge.

¶ 1 Under Arizona Revised Statutes (A.R.S.) § 43–1001(2) (1998 and Supp.2000), the Arizona gross incomes of state and local employees, like those of federal employees and all other Arizona individual income taxpayers, are deemed to be the same amounts that are calculated as their adjusted gross incomes for the purpose of federal income taxation. As permitted by 26 U.S.C. § 414(h)(2), Arizona has elected to "pick up" most state and local governmental employees' mandatory contributions to their retirement plans. Those contributions are therefore excluded from their federal adjusted gross (Arizona gross) incomes. A.R.S. § 43–1001(2). Congress, however, has not authorized the United States Government to "pick up" federal employees' mandatory contributions to their retirement plans. The effect of A.R.S. § 43–1001(2) on federal employees who reside in Arizona is to sweep all such contributions into their Arizona gross incomes.

¶ 2 Thus, for tax years from 1991 onward, Arizona law subjects to Arizona individual income taxation those portions of federal employees' compensation that they are required to contribute toward federal employee retirement plans, while leaving untaxed the corresponding mandatory contributions of most state employees to state employee retirement plans. This results in similarly situated and similarly earning taxpayers paying differing amounts. The superior court held that this statute, A.R.S. § 43–1001(2), violated the Public Salary Tax Act of 1939, 4 U.S.C. § 111.[1] The Arizona Department of Reve-

---

1. The pertinent text of 4 U.S.C. § 111 is:

    The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... by a duly constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

   This legislation is effectively a codification of the constitutional intergovernmental tax immunity doctrine. *See Davis v. Michigan Dep't of Trea-*

nue and its director, Mark J. Killian (ADOR), appeal.

¶ 3 Plaintiffs Clark R. Kerr and Billie Sue Kerr, together with Plaintiffs Susan Moran, Steve Allen, and John Udall (the plaintiff taxpayers), cross-appeal from the superior court's orders denying certification of a plaintiff class consisting of all current or former federal employees who paid Arizona income taxes on mandatory contributions to federal retirement plans during one or more years from 1985 to the present, and of an alternative, smaller class consisting of all such federal employees who also filed timely refund claims with ADOR for one or more of the years 1991 to the present. The appeal and cross-appeal present these issues:

1.  Whether Arizona's income taxing scheme violates 4 U.S.C. § 111 by taxing federal employees' mandatory contributions to retirement plans, but not those of state employees;

2.  Whether the superior court erred or abused its discretion in denying the plaintiffs' motions for class certification; and

3.  Whether equal protection principles preclude ADOR from demanding compliance with an administrative claim requirement for taxpayers who initially paid the challenged taxes, while at the same time declining to pursue tax enforcement against other taxpayers who subtracted

their mandatory federal retirement contributions on their Arizona returns and hence did not pay the challenged taxes.[2]

## FACTS AND RELEVANT PROCEDURE

¶ 4 Until former A.R.S. § 43–1022(2) was amended in 1989, 1989 Ariz. Sess. Laws. Ch. 312, § 12, that statute subtracted from Arizona gross income:

> Contributions made to the state retirement system, the corrections officer retirement plan, the public safety personnel retirement system, the elected officials' retirement plan or a county or city retirement plan.[3]

Arizona law provided no corresponding subtraction for contributions made to federal employee retirement plans.

¶ 5 Since 1979, A.R.S. § 43–1001(2) has defined a resident individual's "Arizona gross income" as his or her federal adjusted gross income for the taxable year, computed under the Internal Revenue Code. *See* 1978 Ariz. Sess. Laws Ch. 213, § 2, eff. Jan. 1, 1979. Federal adjusted gross income is thus the starting point for determining an individual taxpayer's Arizona taxable income and ultimate income tax liability.

¶ 6 Effective in 1985, Arizona enacted provisions authorized by 26 U.S.C. § 414(h)[4]

---

*sury*, 489 U.S. 803, 810–15, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989).

2.  ADOR's opening brief also challenged the superior court's determination that the amended Arizona income tax return filed by Plaintiffs Clark R. Kerr and Billie Sue Kerr for tax year 1984 sufficiently specified a claim for refund of Arizona income taxes they paid on Plaintiff Clark Kerr's mandatory contributions to a federal employee retirement plan during that year. ADOR also challenged the court's decision to declare that the Kerrs' attorneys were entitled to an award of attorney's fees under the "common fund" theory. *See Kerr v. Killian*, 197 Ariz. 213, 218–20, 3 P.3d 1133, 1138–40 (App.2000). ADOR withdrew the common fund award challenge, however. The plaintiff taxpayers also informed us that ADOR had withdrawn its contention that the Kerrs did not sufficiently claim a refund for tax year 1984 and that the plaintiff taxpayers had agreed to limit their appeal from the denial of class certification to tax years 1985 to the present. We therefore do not address these contentions.

3.  The 1989 amendment eliminated the subtraction for contributions to the state retirement system, and county and city retirement plans. A later amendment, 1991 Ariz. Sess. Laws Ch. 155, § 8, eliminated the remaining subtractions. For tax years 1984 through 1986, A.R.S. § 43–1022(2) also permitted subtraction of contributions to the judges' retirement fund. Effective July 1, 1986, that subtraction was repealed and the subtraction for contributions to the corrections officers' retirement fund was added in its place. *See* 1986 Ariz. Sess. Laws Ch. 325, § 3, 5.

4.  Section 414(h) provides:

    > Tax treatment of certain contributions
    > (1) In general
    > Effective with respect to taxable years beginning after December 31, 1973, for purposes of this title, any amount contributed— (A) to an employees' trust described in section 401(a), or (B) under a plan described in section 403(a), shall not be treated as having been made by the employer if it is designated as an employee contribution.

that permitted state and local governmental employers to "pick up" mandatory contributions that their employees would otherwise have made. This enabled those state employees to exclude the amounts of their retirement plan contributions from their federal gross income. Congress has not chosen to make this benefit available to federal employees.

¶ 7 Consequently, under A.R.S. § 43–1001(2), the Arizona gross incomes of federal employees include all sums they are required to contribute to their respective retirement plans, while the Arizona gross incomes of state and local employees whose employing units "pick up" their required contributions to retirement plans necessarily exclude the amount of those contributions.[5] *See Kerr v. Waddell,* 183 Ariz. 1, 12–13, 899 P.2d 162, 173–74 (App.1994) (*Kerr I* ), *vacated on other grounds,* 185 Ariz. 457, 916 P.2d 1173 (App. 1996) (*Kerr II* ).

¶ 8 In *Davis v. Michigan Department of Treasury,* 489 U.S. 803, 816, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), the Supreme Court invalidated certain Michigan income taxing provisions that taxed retirement benefits paid by the United States Government while exempting retirement benefits paid by state and local governmental entities. The Court determined that the Michigan taxing scheme violated 4 U.S.C. § 111. The Court later held that *Davis* was to be applied retroactively. *Harper v. Virginia Dep't of Taxation,* 509 U.S. 86, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).

¶ 9 In 1989, the plaintiff taxpayers brought an earlier action, Tax Court Cause No. 89–01153, challenging the differential taxation of A.R.S. § 43–1001(2) and former A.R.S. § 43–1022(2). In *Kerr I* this court held that their state-law claims for refunds were barred by their failure to exhaust their administrative

remedies before bringing the action, but that their claims for declaratory and injunctive relief under 42 U.S.C. § 1984 could proceed. *Kerr I* held that former sections 43–1022(2) and 43–1001(2), as applied to state and federal employees, violated 4 U.S.C. § 111. 183 Ariz. at 14–17, 899 P.2d at 175–78.

¶ 10 On petition for review our supreme court remanded for further consideration in light of *National Private Truck Council, Inc. v. Oklahoma Tax Commission,* 515 U.S. 582, 115 S.Ct. 2351, 132 L.Ed.2d 509 (1995). On remand this court held that Arizona's administrative process for challenging the denial of tax refunds provided an adequate state remedy within *National Private Truck Council,* and that the plaintiffs' claims under 42 U.S.C. § 1984 were barred because plaintiffs failed to resort to and exhaust those remedies. *Kerr II,* 185 Ariz. at 464–67, 916 P.2d at 1180–83. We remanded the action to the tax court with directions to dismiss it in its entirety. *Id.*

¶ 11 Simultaneously with the filing of their 1989 action in the tax court, the plaintiff taxpayers filed corresponding administrative refund claims with ADOR. In 1993, a hearing officer for ADOR determined that ADOR had no authority to rule on the legality of A.R.S. § 43–1001(2) and former A.R.S. § 43–1022(2) or to recognize a class refund claim. *Kerr v. Killian,* 197 Ariz. 213, 3 P.3d 1133 (App.2000) (*Kerr III* ). In 1994, during the pendency of *Kerr I* in this court, the Arizona Board of Tax Appeals heard the plaintiff taxpayers' administrative appeal from the ADOR hearing officer's adverse ruling. The matter remained under advisement with the Board until 1997, the year following the dismissal of the plaintiff taxpayers' first action pursuant to *Kerr II. Kerr III,* 197 Ariz. at 215–16, 3 P.3d at 1135–36. The Board ruled that the plaintiff taxpayers were entitled to refunds for 1985 through 1990 because former A.R.S. § 1022(2) violated the intergov-

(2) Designation of units of government
For purposes of paragraph (1), in the case of any plan established by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing, where the contributions of employing units are designated as employee contributions but where any employing unit picks up the contributions, the contributions so picked up shall be treated as employer contributions.

5. The fund managers of the Public Safety Personnel Retirement System and the Corrections Officer Retirement Plan have the power to authorize state and local employers to "pick up" the retirement contributions of members of those plans. A.R.S. §§ 38–843.01 through 38–843.04 (Supp. 2000) and 38–891 (1996). As of 1999, neither fund manager had done so.

ernmental tax immunity doctrine codified in 4 U.S.C. § 111. The Board also held that A.R.S. § 43–1001(2) did not violate that doctrine and that no refunds for tax years after 1990 would be awarded. The Board also agreed with the ADOR hearing officer that neither ADOR nor the Board could entertain a class refund claim.

¶ 12 The plaintiff taxpayers and ADOR commenced the instant actions in April and May 1997 to appeal the Board's ruling. In mid–1997, the Governor of Arizona directed ADOR "to make refunds for the tax years 1985 through 1990 to all taxpayers who had filed timely refund claims, whether they were parties to the administrative action or not." *Kerr III*, 197 Ariz. at 216, 3 P.3d at 1136. In June 1998 the tax court entered a judgment awarding the plaintiffs' attorneys an award of 20% of each such refund for fees under the common fund doctrine. We affirmed that judgment. *Kerr III*, 197 Ariz. 213, 3 P.3d 1133.

¶ 13 During the pendency of the appeal in *Kerr III*, the superior court denied plaintiff taxpayers' motion to certify a class consisting of all current and former federal employees who paid Arizona income taxes on contributions they made to United States Government retirement plans from 1984 to the present who have not received refunds of such taxes. Following the analysis of our opinion in *Kerr I*, vacated in *Kerr II*, the court later held that the application of A.R.S. § 43–1001(2) violated 4 U.S.C. § 111 to the extent it caused discriminatory state taxation of federal employees as compared to state and local governmental employees. Finally, the court denied the plaintiff taxpayers' alternative motion to certify a class of all federal employees who filed timely refund claims for one or more years from 1991 to the present.

¶ 14 From judgment entered in accordance with the superior court's rulings, ADOR appeals and the plaintiff taxpayers cross-appeal.

## ANALYSIS

### A. Differential Taxation of Retirement Plan Contributions

#### 1. Standard of Review

■ ¶ 15 On appeal from summary judgment, the trial court's rulings on questions of law are reviewed *de novo*. *United Bank of Ariz. v. Allyn*, 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App.1990).

#### 2. A.R.S. § 43–1001(2) and 4 U.S.C. § 111

¶ 16 As calculated for tax purposes in Arizona, the amount on which taxes are paid is the adjusted gross income for federal taxation purposes. According to A.R.S. § 43–1001(2), the gross incomes of state and local employees, like those of federal employees and all other Arizona taxpayers, constitutes this amount. Further, Arizona's individual income tax statutes contain no provision that adds back the sums representing state and local government employees' mandatory retirement contributions in the process of calculating their Arizona taxable incomes. They also contain no provision that subtracts the sums representing federal employees' mandatory retirement contributions in that process. The net result is that federal employees pay Arizona income taxes on the amounts representing their mandatory retirement contributions, while some state and local governmental employees do not.

¶ 17 In *Kerr I* we determined that the Arizona income taxing scheme thereby violated 4 U.S.C. § 111. We stated:

Both the tax court and the defendants err in relying upon "the source of the pay or compensation" to extricate Arizona's scheme for taxation of federal, state, and local retirement contributions from the prohibited category of discrimination. The thrust of defendants' reasoning is found in their statement that "[t]he only obstacle to the exclusion of federal plan contributions [from Arizona income taxation] is the federal employer, who has refrained from acting to 'pick up' contributions." Their implicit major premise, which is incorrect, is that Arizona was helpless other than to adopt federal adjusted gross income without modification as part of the state income tax scheme.

Contrary to the tax court's ruling and appellees' reasoning, it was ultimately Ari-

zona legislative action that imposed the discriminatory tax scheme. In other words, it was not federal legislative action, but state legislative action that caused state and local retirement contributions to be exempted from Arizona income taxation while federal retirement contributions were not. No provision of law to which we are cited required Arizona to adopt federal adjusted gross income in determining Arizona taxable income.

183 Ariz. at 14–15, 899 P.2d at 176–77.

¶ 18 The reasoning of *Kerr I* is incomplete and ultimately incorrect. As we have observed, 4 U.S.C. § 111 consents to state and local taxation of federal employees' pay or compensation as long as "the taxation does not discriminate against the officer or employee because of the source of the pay or compensation." The *Kerr I* court focused on whether the differing Arizona tax treatment of state and local governmental employees as compared to that of federal employees actually resulted from the operation of Arizona income tax statutes. *Kerr I* accordingly never directly addressed the more fundamental question whether the differential Arizona tax treatment was actually "based on" the federal or state source of the pay or compensation.

¶ 19 The seminal modern decision under 4 U.S.C. § 111 and the intergovernmental tax immunity doctrine is *Davis*. 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891. In *Davis*, a Michigan statute expressly excluded from state taxable income all retirement benefits received from the state and its political subdivisions, but included most other forms of retirement benefits. The Court stated: "The effect of this definition is that the retirement benefits of retired state employees are exempt from state taxation while the benefits received by retired federal employees are not." 489 U.S. at 806, 109 S.Ct. 1500.

¶ 20 In *Jefferson County v. Acker*, 527 U.S. 423, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999), the Supreme Court demonstrated its approach to identifying circumstances in which, unlike the situation in *Davis*, 4 U.S.C. § 111 is simply inapplicable. In *Jefferson County*, two federal judges who held court in Jefferson County, Alabama, challenged a county "license tax" on persons who engaged in business activities that were not subject to any other license or privilege tax under Alabama law. The judges' theory was that as applied to them, the county tax directly burdened the federal government or its instrumentalities in violation of the intergovernmental tax immunity doctrine. The Supreme Court disagreed and held that the tax operated as a nondiscriminatory tax on employee compensation and was permissible under that doctrine as codified in 4 U.S.C. § 111. The Court explained:

In *Davis*, the Court held that a state tax exempting retirement benefits paid by the State but not those paid by the Federal Government violated the Public Salary Tax Act's nondiscrimination requirement. See 489 U.S.,[sic] at 817–818 [109 S.Ct. 1500]. Jefferson County's tax, by contrast, does not discriminate against federal judges in particular, or federal officeholders in general, based on the federal *source* of their pay or compensation. The tax is paid by all State District and Circuit Court judges in Jefferson County and the three State Supreme Court justices who have satellite offices in the county.

527 U.S. at 442–43, 119 S.Ct. 2069.

¶ 21 From *Davis* and *Jefferson County*, we derive the principle that a state income taxing scheme may be said to discriminate between federal employees and state or local employees "because of the source of [their] pay or compensation" if it gives state or local employees an income tax advantage over federal employees, regardless of whether other state or local taxpayers are in the same position as federal employees, or the state taxing scheme imposes an income tax disadvantage on federal employees but not on state or local employees, regardless of whether other state or local taxpayers are in the same position as state or local employees. The discrimination found in *Davis*, and also that which resulted from the application of former A.R.S. § 43–1022(2) in this case, is of the first variety—in both situations the state taxing scheme conferred a tax benefit exclusively on some state and local employees to the exclusion of federal employees and all other state and local taxpayers.

¶ 22 The plaintiff taxpayers in this case seek to analogize the second variety of discrimination to A.R.S. § 43–1001(2). Their attempt fails. Section 43–1001(2) disadvantages **all** Arizona resident individual taxpayers, private or governmental, who make mandatory retirement plan contributions that are not "picked up" or paid directly by their employers, over **all** Arizona resident individual taxpayers whose private or governmental employers pick up or directly pay their mandatory retirement contributions. Either of these groups may contain both state or local government employees and federal employees. The Arizona taxing scheme does not single out all or any subgroup of state or local governmental employees for advantageous treatment as against all others. It likewise does not single out all or any subgroup of federal employees for disadvantageous treatment as against all others. Under those circumstances, despite the fact that some state and local employees are taxed more favorably than federal employees and other Arizona income taxpayers by virtue of A.R.S. § 43–1001(2), we conclude as a matter of law that Arizona law does not discriminate against the plaintiff taxpayers or their putative class "because of the source of [their] pay or compensation" in violation of 4 U.S.C. § 111.

¶ 23 The Supreme Judicial Court of Massachusetts similarly analyzed an analogous situation in *Cooper v. Commissioner of Revenue*, 421 Mass. 557, 658 N.E.2d 963 (1995). In that case a Massachusetts statute exempted from state taxation all retirement benefits paid by annuity, pension, endowment, or retirement plans of the United States government or the state or governmental employers to which the recipient employee had contributed. Under this statute, state, local, or federal employees who had not contributed a portion of their salary to their retirement funds were required to pay state income taxes on their retirement benefits.

¶ 24 The plaintiff taxpayers in *Cooper* were military retirees whose retirement plan was funded entirely by the federal government. They claimed refunds of Massachusetts income taxes that they paid on their military retirement benefits. The Appellate Tax Board dismissed their claims.

¶ 25 The Supreme Judicial Court affirmed. The court reasoned:

Massachusetts tax law distinguishes between contributory and noncontributory retirement plans, not between State and Federal retirees. "The determining factor for the Massachusetts exemption is whether the retirement fund is a 'contributory fund to which the employee has contributed.'" Technical Information Release (TIR) 89–6 (May 10, 1989), 2 Official MassTax Guide at 369 (West 1995). "Any Federal retirement income is exempt from Massachusetts tax if the system is contributory and the employee actually contributed," *id.*, and, on the other hand, "[a] non-contributory government pension, received by a retired employee of [a political subdivision of the Commonwealth] . . . is includable in the Massachusetts gross income of the employee . . . in the taxable year in which the pension is paid." Letter Ruling 81–51 (June 11, 1981), *supra* at 576. In sum, the statutory provisions treat retirement benefits paid by the Commonwealth and the Federal government in precisely the same way.

658 N.E.2d at 964.

¶ 26 Arizona's taxing scheme similarly distinguishes not between state and federal employees, but rather between all those whose employers make or pick up their mandatory retirement contributions and all those whose employers do not. The Arizona taxing scheme, like that of Massachusetts, does not discriminate "because of the [federal or state] source of the pay or compensation." *Cf. Witte v. Director of Revenue*, 829 S.W.2d 436, 439 n. 4 (Mo.1992) (rejecting analogous challenge to non-deductibility of federal civil service retirement system contributions, stating: "The appellants have not shown the existence of a line of demarcation between those who benefit from § 143.141 [allowing state deduction of FICA, railroad retirement, and self-employment taxes paid to federal government] and those who do not, based on a classification scheme that is, indeed, 'intergovernmental.'").

¶ 27 The plaintiff taxpayers cite *Memphis Bank & Trust Co. v. Garner,* 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562 (1983), for the proposition that federal law does not permit "piggybacking" to excuse discriminatory state taxation. They are mistaken in believing that *Memphis Bank & Trust* supports their position in this case. That case involved a state income tax system that adopted federal adjusted gross income as state gross income but made no provision for excluding interest on federal notes and bonds from state taxation. Because interest income from state and local notes and bonds is excluded from federal gross income, it never became a part of the state gross income. The Court found that the state system violated the intergovernmental tax immunity doctrine because it discriminated between holders of state and federal obligations "by including in the tax base income from federal obligations while excluding income from otherwise comparable state and local obligations." 459 U.S. at 398, 103 S.Ct. 692.

¶ 28 The beneficiaries of the state taxing scheme challenged in *Memphis Bank & Trust* were defined by no broader principle or characteristic than their status as holders of state and local obligations. Here, in contrast, the beneficiaries of the challenged Arizona taxing scheme are all those persons whose employers, whether state, local, federal, or private, either make or pick up their employees' mandatory retirement plan contributions. Similarly, the persons who are disadvantaged by the challenged Arizona taxing scheme are all those whose employers, again whether state, local, federal, or private, choose to leave to their employees the obligation to make their own mandatory retirement plan contributions with after-tax dollars.

¶ 29 The superior court erred in determining that A.R.S. § 43–1001(2) and the Arizona resident individual income taxing scheme violated 4 U.S.C. § 111 and the intergovernmental tax immunity doctrine as applied to the plaintiff taxpayers.

## B. Denial of Class Certification

¶ 30 The plaintiff taxpayers cross-appeal from the denial of their motions to certify two alternative plaintiff classes. The sole legal theory on which the plaintiff taxpayers based their claim for refunds for tax years after 1990 was that taxation of their mandatory contributions to federal retirement plans by dint of A.R.S. § 43–1001(2) violated the intergovernmental tax immunity doctrine codified as 4 U.S.C. § 111. We have rejected this theory. The plaintiff taxpayers' appeal is thus moot to the extent it challenges the tax court's orders denying their motions to certify plaintiff classes for tax years 1991 through the present. *See McNutt v. Dep't of Revenue,* 196 Ariz. 255, 268, ¶ 51, 995 P.2d 691, 704 (App.1998). We accordingly consider the plaintiff taxpayers' appeal from the denial of class certification only to the extent it pertains to tax years 1985 through 1990.

### 1. Standard of Review

■ ¶ 31 We review the trial court's ruling on a motion for class certification for abuse of discretion. *Godbey v. Roosevelt Sch. Dist. No. 66 of Maricopa County,* 131 Ariz. 13, 16, 638 P.2d 235, 238 (App.1981); *Markiewicz v. Salt River Valley Water Users' Ass'n,* 118 Ariz. 329, 341, 576 P.2d 517, 529 (App.1978).

### 2. The Trial Court's Order

¶ 32 In June 1997, two months after the plaintiff taxpayers commenced this litigation, the Governor of Arizona directed ADOR to make refunds for tax years · 1985 through 1990 to all taxpayers who had filed timely refund claims, whether or not they had been parties to any administrative proceedings on those claims. *Kerr III,* 197 Ariz. at 216, ¶ 8, 3 P.3d at 1136. It is undisputed that ADOR took action to implement that order, though disputes arose concerning ADOR's refunding decisions in particular claimants' cases.

■ ¶ 33 The plaintiff taxpayers later moved unsuccessfully to certify a class consisting of all current and former federal employees who paid Arizona income taxes on contributions they made to United States Government retirement plans from 1984 to the present who had not been paid refunds of such taxes. The relevant class would have encompassed all current or former federal

employees who paid Arizona income taxes on their mandatory contributions to federal retirement plans and either (1) filed a refund claim that ADOR denied, or (2) filed no refund claim at all. The plaintiff taxpayers fail to convince us that the trial court abused its discretion by denying that motion as to tax years 1985 through 1990.

¶ 34 The trial court could reasonably have concluded that certification of a class of those whose refund claims had been denied would have not been "superior to other available methods for the fair and efficient adjudication of the controversy." Ariz. R. Civ. P. 23(b)(3). Each member of the prospective class would already have invoked the process contemplated by Arizona Individual Income Tax Ruling ITR 98–1 and would have been entitled to appeal the denial of their claims administratively and judicially. *See* A.R.S. §§ 42–1101, –1104, –1106, –1118, –1119, –1122, –1251 through –1254 (1999 and Supp. 2000). The trial court might understandably have been reluctant to overlay a second, redundant level of judicial supervision on the individual claims payment process that ADOR had already undertaken for tax years 1985 through 1990.

¶ 35 As we have mentioned, the putative class would also have encompassed refund 'claimants' who had filed no written refund claims with ADOR in any form. In *Arizona Department of Revenue v. Dougherty (Ladewig)*, 198 Ariz. 1, 6 P.3d 306 (App.2000), review granted January 9, 2001, this court held that a tax refund action may be brought and maintained as a class action, but that membership in the putative class is restricted to those taxpayers who have exhausted applicable statutory administrative remedies before the Department of Revenue and the Board of Tax Appeals. The Arizona Supreme Court's opinion on that issue will be controlling. We do not propose to revisit the issue while it is under advisement in that court. We elect instead to follow our own opinion in *Ladewig*.

¶ 36 We assume *arguendo* that ADOR would be estopped to deny that the bare filing of amended income tax returns, refund claims, or protective claims as contemplated by ADOR Arizona Individual Income Tax

Ruling ITR 98–1 constituted sufficient exhaustion of administrative remedies within the contemplation of the court in *Ladewig*. *See Valencia Energy Co. v. Arizona Dep't of Revenue*, 191 Ariz. 565, 575–79, ¶¶ 29–41, 959 P.2d 1256, 1266–70 (1998) (ADOR may be subjected to equitable estoppel under limited circumstances). However, a person who files no refund claim of any description cannot be said to have complied with the exhaustion requirement no matter how loosely it may be interpreted. The trial court was within its discretion in declining to certify a class consisting of current or former federal employees seeking refunds for years between 1985 through 1990 for which they had failed to file any form of administrative refund claim.

¶ 37 Because of our analysis, we need not address the question of adequacy of the plaintiff taxpayers' representation of the putative class, the typicality of the plaintiff taxpayers' claims as compared to those of the putative class members, or the numerosity of the putative class. *See* Ariz. R. Civ. P. 23(a). We decline to consider the plaintiff taxpayers' contention, made for the first time in its Reply Brief on Cross–Appeal, that the orders denying class certification must be reversed because the superior court failed to make sufficiently specific findings under Rule 23.

## C. ADOR Enforcement of Claim/Exhaustion Requirements

¶ 38 Finally, we consider the plaintiff taxpayers' contention that equal protection principles bar ADOR's argument that only persons who filed timely administrative claims may receive refunds. They point out that in 1998 ADOR's Enforcement Division stated in writing that it would abate and refrain from enforcing any unpaid assessments of Arizona individual income taxes attributable to federal retirement contributions made from 1984 through 1990, and that such an abatement was granted in at least one case. Citing *Gosnell Development Corp. v. Arizona Department of Revenue*, 154 Ariz. 539, 541, 744 P.2d 451, 453 (App.1987), and *Smith v. State*, 349 N.C. 332, 507 S.E.2d 28 (1998), the plaintiff taxpayers argue that "DOR's refusal to provide refunds to those who paid the illegal tax but did not file a claim form, while simul-

**134**

taneously giving the full benefit of *Davis* and *Kerr I* to those who did not pay in the first place (and so obviously filed no claim form)," contravened equal protection principles.

 ¶ 39 We disagree. Unlike the situation in *Gosnell* and *Smith*, the persons to whom the plaintiff taxpayers contend relief was unfairly granted were not in the same position as those taxpayers who filed no administrative claims. In *Gosnell*, the plaintiff's competitors had mistakenly calculated and paid contracting taxes on a tax base that excluded non-deductible sums, while the plaintiff had made no such exclusions and paid the correct amounts. ADOR adopted a policy that upon any future audit of the competitors, no deficiency assessments would be made, but at the same time declined to grant any refund to the plaintiff. Similarly, in *Smith* the taxing authority had made refunds of illegal taxes to some but not all taxpayers who had failed to file notices of refund claims. In contrast, all taxpayers here against whom ADOR determined not to enforce deficiency assessments had previously filed individual returns that affirmatively claimed deductions for sums contributed to mandatory federal retirement plans. Those returns did not differ in substance from the administrative claims filed by those who had initially paid the disputed taxes. The taxpayers whose deficiency assessments ADOR abated were not situated similarly to taxpayers who filed no administrative refund claims at all. No violation of equal protection rights appears.

### CONCLUSION

¶ 40 Arizona's income taxing scheme applicable to tax years 1991 to the present does not violate 4 U.S.C. § 111 to the extent it taxes federal employees' mandatory contributions to retirement plans, but not those of certain state and local employees. The trial court did not err or abuse its discretion in denying the plaintiff taxpayers' motions for class certification. Equal protection principles do not bar ADOR from denying refunds for tax years 1985 through 1990 to those who filed no administrative refund claims at all for those years, while abating past deficiency assessments against taxpayers who deducted

their federal retirement contributions for the same years and calculated their taxes accordingly.

¶ 41 The judgment and orders on appeal are affirmed in part and reversed in part, and the matter is remanded with directions to enter judgment in accordance with the views expressed in this opinion.

CONCURRING: REBECCA WHITE BERCH, Judge, NOEL FIDEL, Judge.